## MULLIN et ux. v. ST. LOUIS TRANSIT COMPANY, Appellant.*

### Division One, May 30, 1906.

1. **NEGLIGENCE: Contributory: Child: Matter for Jury.** The court may say as a matter of law that the conduct of a man of mature years was, under certain given circumstances, negligent. But under like circumstances when it is a child whose act is in question, the question of contributory negligence is generally one for the jury. Sometimes the age of the child is such that the court may say, as a matter of law, the child was incapable of negligence. But where the question of the child's contributory negligence was submitted to the jury, it is unnecessary on defendant's appeal to so hold, for that was as much as defendant could ask.

2. **———: Negligent Speed of Car: Child: Obstructed View: Erroneous Instruction for Defendant.** Plaintiffs' evidence was that the motorman had an unobstructed view of the track where the child six years old was attempting to cross the tracks, and according to defendant's the child was behind a wagon and suddenly emerged and got on the track before the motorman could stop the car after seeing him. *Held,* that an instruction which told the jury, in effect, that the motorman

---

*Note.—This case should be read in connection with Hafner v. Railroad, 197 Mo. 196, as they illustrate the difference between contributory negligence in a child and a man under like circumstances.—Reporter.

was not to be held guilty of negligence even though he ran the car at a high rate of speed at a public crossing, on which he knew persons were liable to be, when his view was so obstructed that he could not see whether or not the crossing was clear, was exceedingly favorable to the defendant, but as the verdict was for plaintiffs, the defendant cannot complain, for it is proper to assume that the jury believed plaintiffs' testimony that the view was not obstructed.

3. ————: Unfinished Instruction: Not Applied to Facts: Non-Prejudicial. The petition alleged, among other acts of negligence, failure to sound the gong, and plaintiffs' instruction told the jury that it was the duty of the motorman to give a signal by bell of the car's approach, if the jury should believe from the evidence ordinary prudence under the circumstances required such a signal. *Held*, that the instruction is unfinished, and should have itself instructed the jury how to apply the fact, if found, unless there are other instructions directing the jury as to the application of the facts found to exist; but in this case the sounding of the gong was of small consequence, for the child injured was only six years old, on whose movements the sounding of the bell could have had little or no influence, and the verdict being clearly for the right party, it will not, because of the unfinished instruction, be reversed. Besides, in this case there was another instruction which told the jury how to apply that act of negligence, if found.

4. ————: Contributory: Child: Instruction: Looking and Listening. Where the person injured by the street car was a child six years old, trying to cross the tracks at a public crossing, the court should not instruct the jury that if the child neither looked nor listened for the approaching street car, plaintiffs cannot recover. The most the defendant can ask is a direction that it was the child's duty "to exercise the ordinary care of a person of his age and discretion to look and listen."

5. ————: Casualty. Whether the motorman's view was obstructed or not, it is his duty to approach with caution a public crossing where persons are liable to be; and if he approaches it with great speed, and a child is injured, the defendant cannot be excused on the ground that the injury was a mere casualty.

6. ————: Evidence: Impeachment of Witness: Material Fact. The location of a wagon which defendant contends obstructed the motorman's view, was a material though not a very important fact, where the child killed at a public crossing was only six years old and the car was being run at a high rate of speed. And it was not error, in such case, to permit plaintiffs to show that a witness for defendant had made contradictory statements about the location of the wagon.

Appeal from St. Louis County Circuit Court.—*Hon.*
*Jno. W. McElhinney,* Judge.

AFFIRMED.

*Boyle & Priest, J. C. Kiskaddon* and *B. L. Matthews* for appellant.

(1) By the first instruction given at the instance of plaintiffs, they predicate their right to recovery solely on the failure of defendant's motorman to observe the vigilant watch ordinance. They abandon all other allegations of negligence contained in the petition. But by their third instruction it is declared to be the absolute duty of the motorman to sound his gong when approaching the crossing at or near which deceased was struck, if it was a public crossing, and if persons crossing thereon were liable to be struck, but the instruction has no conclusion. It does not require the jury to find that he did fail, nor what the consequences would be if they found that he did fail. Sounding the gong has nothing to do with keeping a vigilant watch. Therefore, the instruction as given is contradictory and misleading, and, if the first instruction was the one upon which plaintiffs relied for recovery, the third is erroneous and ought not to have been given. Chandler v. Kansas City G. Co., 174 Mo. 327; Newell v. Company, 5 Mo. App. 259; Thomas v. Babb, 45 Mo. 387; Dlauhi v. Railroad, 105 Mo. 653. (2) The third instruction is erroneous for another reason. It does not follow that, because the crossing was a public one, or because persons crossing thereon were liable to be struck by a passing car, the motorman was bound to sound his gong. There was nothing to show that persons were peculiarly or even ordinarily liable to be struck by passing cars. This crossing was not at the intersection of a street, but was in the middle of a long block and consisted of stepping-stones over an ordinary macadamized street.

It does not appear that it was in frequent use. Now, the only "circumstances" recited in the instruction are the facts that it was a public crossing and persons using it were liable to be struck by passing cars. From this the jury would naturally infer that these two facts were the "circumstances" which required them, if they believed the gong had not been sounded, to conclude that ordinary prudence had not been exercised. It is submitted that the two instructions, first and third, taken together, are misleading. The jury might think, and be ready to find, that the motorman had kept a vigilant watch, but simply because he had not sounded his gong conclude to find for plaintiff. Keown v. Railroad, 141 Mo. 94; Schmidt v. Railroad, 163 Mo. 645. (3) The court erred in refusing to give instruction 13, asked by defendant. If deceased was of such tender years as to be incapable of contributory negligence, and if the jury found the facts to be as recited in said instruction, then the casualty could only be an inevitable accident. The evidence fully warranted such an instruction. Wendall v. Railroad, 100 Mo. App. 562; Saxton v. Railroad, 98 Mo. App. 499; Lynch v. Railroad, 102 Mo. App. 642; Campbell v. Railroad, 175 Mo. 184; Maschek v. Railroad, 71 Mo. 276; Kennedy v. Railroad, 43 Mo. App. 1; Lee v. Jones, 181 Mo. 299.

*A. R. Taylor* for respondents.

(1) The first point for a reversal made by appellant is something quite involved and baffles legal analysis. We take it to be a contention, or claim, that instructions 1 and 3 of the instructions given at the request of the plaintiffs should not both have been given. The criticism seems to be that, as the first instruction given for plaintiffs was grounded for a recovery upon a failure by the motorman to observe the ordinance pleaded and offered in evidence, therefore, it was error

to instruct the jury, as in the third instruction, as to the duty of the motorman to ring a bell as the car approached the crossing on which plaintiffs' child was killed. There appears no objection to instruction 1, which the court will see is based on the allegations of the petition and proof offered. The third instruction is founded not only on the general rule requiring ordinary care, but under the rule expressly held by this court. Schmidt v. Railroad, 163 Mo. 658; Koenig v. Railroad, 173 Mo. 725. (2) Appellant complains that the trial court modified its instruction as asked by inserting after the words "defendant's track," in the sixth line, the words "to exercise the ordinary care of a person of his age and discretion" to look and listen. The instruction as drawn omitted this qualification, and declared, as a matter of law, that a boy of his age and discretion must look and listen for an approaching car, and, without the modification, put the child upon the same level as an adult. Dlauhi v. Railroad, 105 Mo. 654; Spillane v. Railroad, 135 Mo. 415.

VALLIANT, J.—Plaintiffs' child, six years old, was struck and killed by one of defendant's street cars at a crossing in Easton avenue.

The petition states that the accident was caused by the negligence of defendant's servants in running the car, without giving any warning by bell or otherwise or using any care to watch for persons on the crossing or to control the movement of the car in approaching the crossing or to slacken its speed or stop it so as to avert the injury. The vigilant watch ordinance was also pleaded and negligence in failing to observe its requirements. The answer was a general denial and a plea of contributory negligence. There was a judgment for plaintiffs for $5,000, and defendant appealed.

The evidence in behalf of plaintiffs tended to prove as follows:

The scene of the accident was on or near a foot crossing leading south from the campus of the Christian Brothers College across Easton avenue between Kings Highway on the east and Academy avenue on the west. It was a paved crossing, leading into and from the college grounds; it was 540 feet west of Kings Highway and 160 feet east of Academy avenue. Easton avenue is a wide public street running east and west; the other two streets above named, the one east, the other west, of the crossing, run north and south, intersecting Easton avenue at right angles. Defendant operated a double-track street railroad in Easton avenue. From Academy avenue to Kings Highway along defendant's tracks the grade is slightly declined. The car which struck the plaintiff's child was going east, down the south track, running fast. The plaintiffs' witnesses did not undertake to state in miles per hour the speed at which the car was going, they only said it was going quite fast, but the motorman as a witness for defendant stated that he was going ten miles per hour.

Plaintiffs lived in this neighborhood, two or three blocks from the scene of the accident. The child had gone with his two brothers, the eldest of whom was eleven years old at the time of the trial, to a grocery store east of Kings Highway and they were returning home; there was another boy seven or eight years old with them. After crossing Kings Highway returning home they were walking west along the north sidewalk in Easton avenue when a wagon overtook them going in the same direction and the oldest boy got on behind the wagon; the other boys followed after it until they came to the steps leading into the college grounds, where they all stopped except the boy who was on the wagon, who went on in it. Then the three boys who stopped at the steps started to go across the street on this foot-crossing that has been mentioned. One of plaintiffs' witnesses said that one of the boys held the

hand of this little one, leading him, the others did not so testify, but they all said that the children were in the act of crossing the street, the other two in front and the child who was killed in the rear; a mail carrier standing on the steps leading into the college grounds, seeing the car coming holloed "Stop;" the little one looked back when the man holloed, but did not stop. At the time the man holloed the child was in the space between the two tracks and the next instant he was in the south track and the car struck him; the two others got across safely. It was 160 feet from Academy avenue to the crossing; according to the plaintiff's testimony there was nothing to obstruct the motorman's view of this crossing and he could have seen these children if he had been looking; but the car came swiftly on, without signal or warning and without attempt to check the speed; it ran 100 or 130 feet after striking the child.

The main point of difference between the plaintiffs' testimony and the defendant's is in regard to the position of the wagon that has been mentioned. According to the plaintiffs' testimony the wagon was close to the curb along the north sidewalk, had passed beyond the crossing and had nearly or quite reached Academy avenue before the accident; whereas according to the defendant's testimony the wagon was in the north track of the railroad and was near the crossing and so obstructed the motorman's view that he could not see the crossing at that point or the children who were behind it, and that this child emerged so suddenly from behind the wagon and on to the south track so closely in front of the car that it was impossible to avoid running over him.

The motorman testified that he saw the two children who crossed the track and that they crossed when he was 250 feet away, but that he did not see this child until "he darted from behind the wagon over on to the south track;" that the wagon was only ten or twelve feet west of the crossing and the front end of the car

was about the center of the wagon when the child came out from behind it; that as soon as he saw the child he used every means in his power to stop the car, using the brake, reverse lever and controller and did stop in about seventy-five or one hundred feet.

The facts in this case are quite similar to those in the case of Hafner v. Railroad, 197 Mo. 196, in which case we held that the plaintiff could not recover because the evidence for the plaintiff showed that the deceased was himself guilty of negligence which contributed to the result. The important feature, however, which distinguishes this case from that is that whereas in the Hafner case the victim of the accident was a full-grown man, in this case it was a child six years old. The court may say as a matter of law that the conduct of a man of mature years was, under certain circumstances, negligent, whilst under like circumstances when it is a child whose act is in question, the question of negligence is generally one for the jury. Sometimes the age of the child is such that the court, as it did in the case of Livingston v. Railroad, 170 Mo. 452, may say as a matter of law that the child is incapable of negligence. But in the case at bar there is no occasion for us to pass on that question, because under instructions both for the plaintiffs and the defendant it was submitted to the jury and that is as much as defendant could have asked.

Defendant sought to prove that the wagon going west in the north track shut off the motorman's view of the crossing as he was going east on the south track and rendered it impossible for him to see the child until it suddenly emerged from behind the wagon immediately in front of the car and therefore the motorman was not guilty of negligence. The trial court seems to have taken that view, and at the instance of the defendant instructed the jury that under those facts the plaintiffs could not recover on the theory that the motorman failed to keep a vigilant watch or stop the car in the shortest time and space possible. Under that

instruction the motorman was to be held not guilty of negligence even though he ran his car at a high speed to a public crossing, on which he knew persons were liable to be, when his view was so obstructed that he could not see whether or not the crossing was clear. That was a very favorable instruction to defendant, but as the verdict was for the plaintiffs we must assume that the jury credited the witnesses for the plaintiffs who testified that the wagon and car passed each other at or near Academy avenue, and that the jury concluded therefore that there was nothing to obstruct the motorman's view of the crossing. According to the testimony of the motorman himself he must have approached the crossing at a high rate of speed and without any regard to the crossing for he said that after striking the child the car ran from seventy-five to one hundred feet although he applied the brake and reversed the power.

Appellant complains of the third instruction for plaintiffs which in effect tells the jury that if they find from the evidence that that was a public crossing on which persons were liable to be, it was the duty of the motorman to use ordinary care and to give a signal of its approach by bell or otherwise if the jury should believe from the evidence that ordinary prudence under the circumstances required such signal. Appellant's criticism of the instruction is that it does not instruct the jury as to what the consequence would be if they did find that the motorman did fail to give such signal.

The instruction does leave the subject unfinished. An instruction in that form is proper enough to aid a jury in finding whether or not a defendant has been guilty of negligence in a particular charged, in a case where there are other instructions directing the jury as to what application should be made of the fact found either alone or in connection with other facts, as the case may be, but in an action founded on negligence when an instruction informs the jury that certain facts if found, constitute negligence, the instruction should

direct the jury how to apply the facts to the case in hand unless other instructions do so. In this case although the petition alleges among the acts of negligence, which caused or combined to cause the accident, the failure to sound the gong, yet the plaintiffs asked no other instruction on that point except the one now under discussion, and therefore so far as the instructions given for the plaintiffs go, the jury would not know what to do with the fact after they had found it. But the sounding of the gong was a matter of small consequence in this case; it could have had little if any influence on the movements of a child six years old, and the verdict is so clearly for the right party that we would not feel justified in reversing the judgment for so small an error. Besides the instructions given at the request of the defendant remove any difficulty that the unfinished state of the plaintiffs' instruction on this point produced. Among the acts of negligence which, in the defendant's instructions, the jury are informed the plaintiffs charge, is the failure to give signal by bell or otherwise and in that connection the jury are told that the burden is on the plaintiffs to prove "that one or more of the said alleged acts of negligence was or were the efficient and proximate cause of the death of said Mark, and unless the plaintiffs have so proven, the verdict must be for the defendant." That means that unless the failure to ring the bell was the cause or one of the causes that produced the injury it could not be charged up against the defendant.

There was nothing wrong with this instruction of the plaintiffs as far as it went. Here was a public crossing leading into the college campus; the defendant itself realized that its duty was under the circumstances of this case to sound the gong, and the motorman testified that he did so.

The sixth instruction asked by the defendant was to the effect that if as the car approached the crossing the child was concealed behind the wagon, then it was his

duty to himself and to the defendant, after leaving that position and before attempting to cross the railroad tracks, to look and listen for a coming car, and if he stepped on the track in front of the car without first looking and listening it was his fault and the plaintiffs could not recover. The instruction in that form would have put the child on an equal footing with a person of mature years; therefore, the court modified it by inserting words to make it say that it was the duty of the child "to exercise the ordinary care of a person of his age and discretion to look and listen." The instruction as thus modified was as favorable to the defendant as it had any right to ask.

In the argument for appellant on this instruction it is contended that even if it was not contributory negligence in the child to pass from his position of concealment behind the wagon on to the track, still the act of the child was the sole cause of the accident and if the child was incapable of negligence then the result was a mere casualty for which no one was to blame.

This instruction is not based on the mere casualty theory, it concludes with saying that failure to look and listen "was negligence on his part which directly contributed to his death, and the verdict must be for the defendant." But defendant did ask an instruction based on the mere casualty theory, which the court refused, and properly so, because the evidence neither for the plaintiff nor defendant supported that theory; whether the car came down at a high rate of speed with the track in clear view of the motorman and the children on it, as the plaintiffs' evidence tended to prove, or whether the motorman's view was obstructed by the wagon, as he himself said, it makes little difference; he knew that the crossing was there, that people were liable to be on it, and if his view was obstructed he should have approached it with caution.

One of defendant's witnesses testified that the wagon mentioned was in the north track; on cross-ex-

amination he was asked if he had not on a certain other occasion said that it was between the north track and the curb along the sidewalk and he denied having made the statement; afterwards plaintiffs' were permitted over the objection of defendant to introduce evidence tending to prove that the witness had made such statement. That is assigned for error, appellant contending that it was attempting to impeach a witness on an immaterial matter. The location of the wagon was a material, although not a very important fact in the case tending to corroborate, as the fact might be found to be, either the theory of the plaintiffs' testimony that the motorman's view of the crossing was clear, or that of the defendant's evidence that it was obstructed. The court did not err in receiving that evidence.

We find no error in the record of which the defendant has any cause to complain. The judgment is affirmed.

All concur.